Joseph LaBONNE

v.

Margaret HECKLER.

Darlene E. SEXTON

v.

Margaret HECKLER.

James W. STEWART

v.

Margaret HECKLER.

Craig S. BOHN

v.

Margaret HECKLER.

Nick S. FRANKO

v.

Margaret HECKLER.

Civ. Nos. 4–83–40, 4–83–449, 4–83–464, 4–83–587 and 5–83–193.

United States District Court, D. Minnesota, Fourth and Fifth Divisions.

Nov. 22, 1983.

---

Ethel Schaen, St. Paul, Minn., for plaintiff LaBonne.

Wallace Sieh, Winona, Minn., for plaintiff Sexton.

Michael J. Sheahan, St. Paul, Minn., for plaintiff Stewart.

M. Francesca Chervenak, Minneapolis, Minn., for plaintiff Bohn.

Jerome Shermoen, International Falls, Minn., for plaintiff Franko.

James M. Rosenbaum, U.S. Atty. by Robert Small, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION

MILES W. LORD, Chief Judge.

In each of the cases listed above, the Secretary of Health and Human Services (Secretary) has issued a final decision denying disability benefits under 42 U.S.C. §§ 416(i)(1), 423, or 1382. The plaintiffs have sought review by filing complaints before this court. In all cases, the government has failed to file timely answers to the complaints. Instead, the government

has moved that the cases be remanded to the Secretary for further proceedings because of a lost tape or incomplete file or inaudible tape. All motions to remand were filed after the period for filing the answers had passed.

Plaintiffs objected to the motions to remand and requested that the court order benefits be paid pending the filing of the answers. Plaintiffs also requested that additional attorneys fees be awarded.

This court held a hearing on the matter on November 1 and 2, and at that time ordered the immediate payment of interim benefits. This memorandum will set forth the reasons for that order. The issue of attorneys fees will be considered at a later date.

BACKGROUND

The reason for the government delays quickly became apparent at the November hearing. The government is having difficulty defending these cases because of confusion spawned by the tremendous number of Social Security appeals nationwide. There are now 39,000 pending cases in federal courts involving appeals from the Secretary's decisions either denying initial applications for benefits or terminating benefits for individuals presently on the rolls. In fiscal year 1983 alone, more than 22,000 new appeals were filed. This compares to only about 5,000 appeals in 1980; 7,293 in 1981; and 7,883 in 1982.

In this district, there were 320 social security appeals pending as of October 1, 1983. More than one new appeal is being filed here every day.

The flood of appeals is due in large part to an increase in the number of disability applications denied by the Secretary. In 1981, the Secretary awarded disability benefits to only 345,000 people, the smallest number since 1969. This statistic is made even more dramatic by the fact that the number of people paying into the program increased by 34% during those years.

Another factor causing the large number of appeals is the Secretary's termination program, also known as the Continuing Disability Investigation (CDI). The CDI program accounts for 40% of the appeals now being filed in federal courts. Under this program, the Secretary each year reevaluates the eligibility of one-third of the recipients of disability benefits. Individuals whose benefits are discontinued may appeal within the administration and then, if necessary, in federal courts. Many of the applicants are caught in the administration's appeal process for as long as one to two years, much of that time without benefits which they deserve under the law.

With this mass of appeals, the Secretary has had difficulties defending its lawsuits. Communication between the local offices of the U.S. Attorney and the Secretary's Office of Hearings and Appeals has been slow. Storing and keeping track of the large number of hearing tapes and files has proven to be difficult. The Secretary began a master-tape system, known as AM-SARS, to try and speed the process, but abandoned it after one year because the system could not function with such a high volume of tapes. Inadequate staffing and insufficient transcribing capabilities have also contributed to the problem.

These individuals seeking benefits have contributed their earnings to the Social Security program in expectation that they would have a means of support if they became disabled. They now come forward asking not for a handout, but that the program serve the purpose for which it was designed. No one—even if not entitled to benefits for which they have applied—should be expected to endure a process so cumbersome and full of delays.

The Secretary has made some attempts to remedy the administrative delays. New staff has been hired. The agency has increased its capacity to transcribe the hearing tapes and print the transcripts. A teletype communications system has been installed between the offices of the U.S. Attorney and the Office of Hearings and Appeals to speed the communication process.

Despite these changes, the delays continue. In this district, the government has moved to remand 21 of the pending cases

because of its inability to file answers. The five cases before this court are merely illustrative of the seriousness of the problem.

Joseph LaBonne first filed his complaint before this court on January 12, 1983. The government failed to file an answer and on March 16 moved for an extension of time. This motion was granted, but still no answer was filed. On June 9 the government filed a motion to remand the case back to the Secretary to reconstruct the file, and this court granted the Secretary 30 more days to respond. Still no answer was filed. On September 19 the government filed another motion to remand, this time on the basis that the hearing tape had been lost. Eight months had gone by without a government answer.

In the case of Darlene Sexton, a complaint was filed on June 2, 1983. The government filed for an extension of time on August 26, and this motion was granted. But the government still failed to file an answer, and on September 19 filed a motion to remand the case because of a lost hearing tape.

James Stewart filed a complaint on June 8, 1983. The government moved to remand the matter on September 19 because of a lost file. But as of the date of the hearing, the plaintiff's attorney had been able to reconstruct almost 99% of his client's social security file from files within his office.

Craig Bohn's complaint was filed on July 5, 1983, and the government's motion to remand was filed on September 19. In Mr. Bohn's case, the government stated as the reason for the remand that the tape of the administrative hearing was partially inaudible. At the November hearing, the court listened to this tape and found that certain portions of the tape concerning crucial testimony of a vocational expert could not be heard. Despite these difficulties with the tape, this court cannot help but conclude that the Appeals Council relied upon this tape in affirming the decision of the Secretary denying benefits.

Finally, a complaint was filed on behalf of Nick Franko on July 1, 1983. The government did not file a motion to remand until September 26.

DISCUSSION

■ The first issue that must be addressed is whether this court has jurisdiction to entertain plaintiffs' motions for interim benefits. The Secretary has argued in similar cases that the finality requirement of 42 U.S.C. § 405(g) precludes district court jurisdiction because further agency action is necessary to locate files and tapes. It is true that the literal terms of that section provide only for review of a "final decision" by the Secretary. However, it appears that the agency has made a final decision by processing these cases through the final steps of its own appeals process. Furthermore, this court could assert jurisdiction even if, assuming *arguendo*, there had not been final agency action. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975), the Supreme Court held that complete exhaustion of administrative remedies is not required if the claimant demonstrates a need for a prompt resolution of the dispute and if the issues before the court are collateral to the substantive claim for benefits. The cases before this court clearly meet both of these requirements. The dire financial circumstances of the claimants make immediate action imperative, and the award of interim benefits does not in any way affect the legitimacy of the plaintiffs' ultimate claims before the agency.[1]

■ The fact that the agency may be doing its best to keep up with an unprecedented flood of cases does not excuse its duty to each and every claimant to act with reasonable speed. The agency still must fulfill its legal obligations to others. *Day*

---

**1.** Other courts confronting a variety of delays by the Social Security Administration have assumed jurisdiction pursuant to the mandamus provisions of 28 U.S.C. § 1361, *Sharpe v. Harris*, 621 F.2d 530 (2d Cir.1980); *Williams v.* *Schweiker*, 541 F.Supp. 1360 (E.D.Mo.1983), as well as the Social Security Act, 42 U.S.C. § 405(g), *Caswell v. Califano*, 583 F.2d 9 (1st Cir.1978). This court also finds that jurisdiction is appropriate under both statutes.

*v. Schweiker,* 685 F.2d 19, 23 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1873, 76 L.Ed.2d 806 (1983); *White v. Mathews,* 559 F.2d 852, 859 (2d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. §§ 555(b) and 706(1), impose a statutory duty upon the agency to proceed within a reasonable time. The Social Security Act instructs the Secretary to make "decisions as to the rights of any individual applying for a payment" of benefits with "reasonable notice and an opportunity for a hearing." 42 U.S.C. § 405(b). The Administrative Procedure Act provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and that the reviewing court "shall ... compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

■ It was the agency's own actions that set off this surge of filings. When the agency several years ago embarked on its massive program of culling its disability files, it should have foreseen that a tide of litigation would follow. The agency should have been prepared for this onslaught of cases. Therefore, this court finds that the statutory "reasonable time" requirements mandate that the agency answer each complaint filed in district court within the normal 60 days allotted to it, subject to exceptions discussed below. The agency has violated these requirements in each of these five cases.

■ The next issue, then, is what remedy is appropriate in order to give substance to plaintiffs' rights to timely answers. The ultimate responsibility for remedying problems in the administration of federal programs lies with Congress. *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940). But the courts are not precluded from acting where, as in the present case, a statutory mandate is not being followed and there is

no Congressional enactment to rectify the problem. *Caswell,* 583 F.2d at 16; *White,* 559 F.2d at 860. In fact, district courts possess considerable discretion in formulating equitable remedies in situations such as this. *See generally, Milliken v. Bradley,* 433 U.S. 267, 280–81, 97 S.Ct. 2749, 2757, 53 L.Ed.2d 745 (1977); *Hills v. Gautreaux,* 425 U.S. 284, 297, 96 S.Ct. 1538, 1546, 47 L.Ed.2d 792 (1976); *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15–16, 91 S.Ct. 1267, 1275–76, 28 L.Ed.2d 554 (1970).

Defendant argued before this court that Congress has considered the problem of delays within the agency, and has enacted its own remedy. A closer review of the congressional action, however, reveals that it does not in fact address the issues before this court. Congress, in the law cited by defendant, provided that benefits may be extended to terminated recipients up until the time they receive a hearing before an administrative law judge. Pub.L. No. 97–455. But no provision is made for claimants who face delays after their administrative hearing. Such is the plight of the plaintiffs before this court on these remand motions.

■ The award of interim benefits is the only appropriate remedy in this situation. Applicants for Social Security disability benefits typically have no other resources to meet their minimal needs for subsistence. *Webb v. Richardson,* 472 F.2d 529, 538 (6th Cir.1972). They need immediate assistance to prevent irreparable harm to their health and well-being. This court, in ordering the payment of interim benefits, is merely acting to preserve the status quo of these needy claimants. In no way is this to be construed as court-imposed punitive action against the agency.

These interim payments are to be paid monthly, in the amounts equivalent to what each plaintiff would receive if found eligible to the benefits he or she is claiming. The interim payments in each case shall cease upon the agency's filing of an answer to the complaint. In the event that the agency's answer is filed in the middle of a

month, the plaintiff will be entitled to full benefits for the entire month. If in a final adjudication it is determined that the interim benefits paid were not due to a plaintiff, the same overpayment and recoupment procedures apply as are available to any recipient of benefits from the Social Security Administration.

The testimony at the hearing before this court left the impression that the agency may face a recurring problem in meeting its obligation to file answers in a timely matter. It might be helpful, therefore, to set out some guidelines for future cases.

■ Where, as with these five cases, the claimant is deprived of his right to a timely answer due to the agency's inability to locate files, that fact alone may create a prima facie case for interim benefits. The agency should then come forward with a specific showing that the answer cannot be filed because of an act outside of its control, such as a fire that destroys files. Otherwise, it may be presumed that the agency, with its sole custody of these records, bears the responsibility for their loss.

The reason for establishing this presumption is that this court has found that the problem of lost files is not peculiar to these five cases. Rather, this is a system-wide predicament caused by a breakdown in the agency's mechanisms for handling appeals. The claimant who is in immediate need of benefits because of his or her disability cannot be asked to assume responsibility for the inadequacy of the present system. The statutes and regulations give this responsibility to the Secretary by giving her the duty to see that individual claims be handled in an expeditious manner.